[Cite as *In re L.W.*, 2012-Ohio-5796.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

IN RE: L.W., JR.                                              :

                                                             :          C.A. CASE NO.    25238

                                                             :          T.C. NO.   A2011-9327-01

                                                             :          (Civil appeal from Common
                                                                         Pleas     Court,     Juvenile
                                                                         Division)
                                                             :

                                                             :

                          · · · · · · · · · ·

                          **O P I N I O N**

             Rendered on the ___7th___ day of ____December____, 2012.

                          · · · · · · · · · ·

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
           Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Blvd., Springboro, Ohio 45066
           Attorney for Defendant-Appellant

                          · · · · · · · · · ·

FROELICH, J.

           **{¶ 1}** L.W. appeals from a judgment of the Montgomery County Court of

Common Pleas, Juvenile Division, which adjudicated him to be a delinquent for tampering with evidence, with a firearm specification. The court committed L.W. to the Department of Youth Services ("DYS") for a minimum of six months on the tampering with evidence charge and for one year on the firearm specification, with the maximum term not to exceed his 21st birthday.

{¶ 2} L.W. claims that the juvenile court was biased against him and that it erred in committing him for the one-year maximum sentence on the firearm specification. For the following reasons, the judgment of the juvenile court will be affirmed.

I

{¶ 3} The State presented the following evidence at the hearings in this case.

{¶ 4} Two Dayton Police Department detectives testified that they learned through a confidential informant that crack cocaine and marijuana were being sold at the back door of a residence at a specific address[1] in Dayton, that the confidential informant made controlled buys from the house under the detectives' supervision, that L.W. had been the seller in some of these sales, and that L.W. had a gun in his hand during one of the controlled buys. The detectives also testified that they had crossed paths with L.W. at "hot spots" of gang and drug activities around the city and believed that he was a member of the "Hoodkal set" of the Dayton View Hustlers gang.

{¶ 5} The State's evidence further established that detectives obtained a search warrant for the house, which was executed by members of the SWAT team because of the

---

[1] There are discrepancies in the record as to the address at which L.W. allegedly sold drugs and tampered with evidence, but these discrepancies are not relevant to the issues presented in this appeal.

concern that there were guns present. L.W. was named as a suspect in the warrant. During the execution of the search warrant, which occurred after dark, officers observed L.W. in an upstairs window "manipulating something in his hand"; L.W. then threw a gun and some marijuana from the window as the SWAT team surrounded the house. These actions formed the basis of the State's complaint charging L.W. with tampering with evidence and the firearm specification.

{¶ 6} The State moved to transfer the case from juvenile court so that L.W. could be tried as an adult. The juvenile court conducted an amenability hearing, after which it denied the State's motion to transfer to case out of juvenile court. Following an adjudication hearing, the juvenile court found that L.W. was responsible for tampering with evidence, with a firearm specification, as alleged in the complaint. He was sentenced as described above.

{¶ 7} L.W. raises two assignments of error on appeal.

{¶ 8} The first assignment of error states:

**The trial court erred by demonstrating bias against Appellant prior to the court's ruling at the adjudicatory hearing.**

{¶ 9} L.W. contends that it was "plain and clear" that the juvenile court judge was biased against him when, at the amenability hearing, the court stated, "I don't think you're guilt free. I don't think you're innocent. It's clear from your involvement with our court system that you have for an extended period of time been involved with drug trafficking at one level or another." The State responds that, when viewed in context, the judge's comments do not demonstrate bias.

{¶ 10} "Judicial bias is 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' *State v. LaMar*, 95 Ohio St.3d 181, 189, 2002-Ohio-2128. Trial judges are 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.' *Eller v. Wendy's Internatl., Inc.* (2000), 142 Ohio App.3d 321, 340, 755 N.E.2d 906. In *Eller*, the court also noted that '[t]he existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party.'" (Additional internal citations omitted.) *Weiner v. Kwait*, 2d Dist. Montgomery No. 19289, 2003-Ohio-3409, ¶ 89-90.

{¶ 11} The comments upon which L.W. relies were made at the amenability hearing, which is required by R.C. 2152.12(B) and at which the trial court considered whether to transfer L.W.'s case from juvenile court for trial as an adult. The portion of the trial court's comments cited by L.W. as evidence of bias does not provide a complete and accurate picture of the comments.

{¶ 12} Prior to issuing its decision from the bench, the court discussed at length the factors set forth at R.C. 2152.12(D) and (E), which are to be considered in determining whether to transfer a juvenile to the general division for treatment as an adult. The court concluded that two factors weighed heavily in favor of transfer: the act charged was committed "for hire or as part of a gang or other criminal activity," and L.W. had a firearm during the commission of the offense. R.C. 2152.12(D)(4) and (5).

**{¶ 13}** According to the court, weighing the other factors was more challenging. With respect to L.W.'s emotional and psychological maturity (R.C. 2152.12(D)(8)), the court indicated that it would rely on the psychological evaluation, which found that L.W. "does not have a mental illness and he is not a mentally retarded person." The court noted that the offense at issue was arguably induced or provoked by the police, if the police were viewed as the "victims," because 25 to 35 police officers were "raiding" L.W.'s home when he threw a gun out the window. R.C. 2152.12(E)(1). Depending on whether L.W. was construed as a leader or as a follower in the gang, he may have been under the coercion of another person at the time of the act charged, R.C. 2152.12(E)(3), or he may have been a principal offender. L.W. had been adjudicated in the past, but his actions in this case did not create any physical harm to any person or property. R.C. 2152.12(D)(1).

**{¶ 14}** The court also detailed L.W.s extensive record of misdemeanor offenses, but noted that he had not yet been arrested or charged for participating in drug buys, notwithstanding the State's assertions that he had "flown under the radar" and that confidential informants had identified him as a seller. The court also observed that the State's evidence of gang activity involved many photographs of L.W. which were found on MySpace and other internet sites, which tended to show association with gang members, but did not depict illegal activity or clearly establish the extent of his involvement with the gang.

**{¶ 15}** After discussing the relevant factors, the trial court stated that the decision whether to transfer L.W. was "a very difficult decision to make." The court continued:

> Young man, I believe you are in a gang. I believe you are a serious
> threat to this community. I believe your family, your father is a very serious

threat to this community. It is clear that your actions are a danger. Your response over the last four or five years had been mediocre at best.

* * *

The problem with this case is that although I believe that you are a danger to this community, I don't believe that there is [sic] sufficient facts before the Court to transfer him to the adult court system.

His psychological report clearly shows that he has been a victim of his community and his family. I'm not sure if being treated as a juvenile will help him, but I do believe there is still time that potentially he can be rehabilitated in the juvenile system if he's kept away from his family long enough to make it work.

Young man, I think I've made it real clear to you, I don't think you're guilt free. I don't think you're innocent. It's clear from your involvement with our court system that you have for an extended period of time been involved with drug trafficking at one level or another.

But I can't in my heart transfer this young man to the adult court system yet. This Court has failed. He's been on probation in the past. * * *

* * * I blame my own probation department for not giving this young man maybe enough services, I have to think, well, they didn't know that he did these drug sales or he was involved in those, * * *. And so that again leads me to believe that maybe our court failed him, just like his family has done for the last 18 years.

{¶ 16} The trial court's statements, viewed as a whole, do not demonstrate that the court was biased against L.W. In fact, they show significant reflection on the conflicting factors that weighed on the decision to transfer L.W., an inclination to place some of the responsibility for L.W.'s past failures to reform his behavior on the court itself, and a willingness to give L.W. another chance. After all, the trial court did not transfer L.W. to an adult court, where he could have faced more serious penalties. Accordingly, we see no basis to conclude that the trial court was biased against L.W.

{¶ 17} The first assignment of error is overruled.

{¶ 18} L.W.'s second assignment of error states:

**The trial court abused its discretion by committing appellant to the Department of Youth Services for the maximum one-year on the firearm specification.**

{¶ 19} Both parties agree that, pursuant to R.C. 2152.17(A)(1), the trial court was permitted to commit L.W. for up to one year for a firearm specification charged under R.C. 2941.141. L.W. contends, however, that the trial court abused its discretion in imposing the maximum term, because he "only had a number of misdemeanor adjudications prior to the instant matter."

{¶ 20} R.C. 2152.01(A) states that the "overriding purposes" of juvenile sentencing are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."

{¶ 21} In imposing the maximum sentence on the gun specification, the juvenile

court expressed its belief that "this young man needs substantial rehabilitation and treatment." The court had previously stated its concerns that L.W. was dangerous, that his friends and family were a bad influence on him, that his family had "failed him * * * for the last 18 years," and that he needed to be "kept away" from these bad influences "long enough to make [rehabilitation] work." The court reiterated that it "wanted [L.W.] treated as a juvenile, not as an adult," and encouraged L.W. to take advantage of the opportunity he was being given, because if he "blew this chance," he could be required to serve more time on the tampering charge or could "get picked up as an adult for much more serious charges."

{¶ 22} The juvenile court's conclusions that L.W. needed substantial rehabilitation and that such rehabilitation could best be accomplished by an extended commitment, keeping him away from the poor influences in his life, were supported by the record. As such, we cannot conclude that the trial court abused its discretion in committing L.W. to DYS for the maximum term of one year on the firearm specification.

{¶ 23} The second assignment of error is overruled.

{¶ 24} The judgment of the juvenile court will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Andrew T. French
Marshall G. Lachman
Hon. Anthony Capizzi