[Cite as *State v. Pulley*, 2016-Ohio-249.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

**STATE OF OHIO,**

      **PLAINTIFF-APPELLEE,**               **CASE NO. 14-15-21**

      **v.**

**ALEXANDRIA PULLEY,**               **O P I N I O N**

      **DEFENDANT-APPELLANT.**


**Appeal from Marysville Municipal Court**
**Trial Court No. 2015-CRB-00088**

**Judgment Affirmed**

**Date of Decision:   January 25, 2016**


**APPEARANCES:**

    *Adam G. Burke* **for Appellant**

    *Rick Rodger* **for Appellee**

Case No. 14-15-21

**ROGERS, J.**

{¶1} Defendant-Appellant, Alexandria Pulley, appeals the judgment of the Marysville Municipal Court convicting her of speeding, possession of marihuana, and possession of drug paraphernalia. On appeal, Pulley argues that the trial court was biased in that it had ultimately decided the merits of the case before Pulley was finished with her case-in-chief. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On February 7, 2015, Pulley was issued citations for possession of drug paraphernalia in violation of R.C. 2925.141, a minor misdemeanor; possession of marihuana in violation of R.C. 2925.11, a minor misdemeanor; and speeding.[1] Pulley entered pleas of not guilty to all three charges on February 23, 2015.

{¶3} The matter proceeded to a bench trial on May 18, 2015 where the following testimony was heard.

{¶4} Trooper Jerrod White of the Ohio State Highway Patrol was the first witness to testify. Trooper White testified that he was working on February 7, 2015. On that morning, Trooper White stated that he stopped Pulley's vehicle for

---

[1] The criminal and traffic cases were assigned different case numbers. The drug paraphernalia and marihuana possession charges were assigned case nos. 15CRB88A and 15CRB88B respectively. The speeding charge was assigned case no. 15TRD795. On appeal, Pulley only challenges her convictions in case numbers 15CRB88A and 15CRB88B. Thus, we will not consider any alleged errors regarding case no. 15TRD795.

a speeding violation. Specifically, he testified that she was traveling at a speed of 80 miles per hour in a 70 miles per hour zone.

{¶5} Trooper White explained that Pulley was the sole occupant of the vehicle that morning. Moreover, he testified that Pulley seemed extremely nervous for a seemingly minor traffic violation. He stated that her hands were shaky and that "she just seemed overly nervous in her demeanor like she was almost ready to cry." Trial Tr., p. 17.

{¶6} Trooper White testified that nervousness can be an indication that other criminal activity is afoot. Although he explained that it is normal for people to be nervous when interacting with police, he stated that usually this nervousness diminishes during the stop; Pulley, however, only seemed to grow more nervous as the stop continued.

{¶7} Trooper White testified that he observed a bottle of Febreze hanging on the back of the front seat in a pouch. He also noticed some perfume in the front passenger compartment. Based on his observations and his training, Trooper White stated that he called a canine unit to perform a drug sniff on Pulley's vehicle.

{¶8} Trooper White explained that Deputy Bob Roberts and his dog arrived on the scene, walked around the car, and Deputy Roberts indicated that the dog alerted on the car. Trooper White stated that Pulley was then removed from the

car while they performed a search of the vehicle. As a result of the search, Trooper White testified that he found two pipes, typically used for smoking marihuana, with what he believed to be marihuana residue inside the pipes. He also found what he believed to be a marihuana cigarette and several pieces of marihuana debris all throughout the console area of the vehicle. Trooper White explained that the cigarette was found right next to Pulley's purse, which was within reach of the driver's seat. Trooper White identified photographs of all the items removed from the car (the pipes, cigarette, and debris), which were admitted into evidence.

{¶9} Trooper White testified that he submitted the items for testing. He identified a copy of the lab report, which was admitted into evidence. The results came back positive for marihuana on all the items.

{¶10} Trooper White stated that Pulley had indicated that she and her friends have smoked marihuana in the past. She also told him that although her grandmother owns the car, Pulley was the primary driver. He added that she possessed the keys to the car. Trooper White concluded by stating that he issued Pulley citations for the violations and let her go on her way.

{¶11} On cross-examination, Trooper White testified that it was uncommon to find Febreze hanging on the back pouch of the front seat, but admitted that it was common to find perfume in a woman's vehicle. He also admitted that neither

the odor of fresh marihuana nor burnt marihuana was present in the vehicle or on Pulley's person.

{¶12} Deputy Bob Roberts of the Union County Sheriff's office was the last witness to testify on behalf of the State. Deputy Roberts testified that he served as a drug canine handler. He stated that he responded to a call made by Trooper White to perform a drug sniff around a person's vehicle.

{¶13} Upon arriving at the scene, Deputy Roberts testified that he and his dog approached Pulley, he explained why they were there and what they were going to do, and asked Pulley if she wanted to admit to anything that was in the car. After this brief conversation, Deputy Roberts stated that his dog positively alerted on the passenger door.

{¶14} On cross-examination, Deputy Roberts admitted that none of the incriminating items could be seen from a plain view search.

{¶15} At the conclusion of Deputy Roberts's testimony, the State rested.

{¶16} Brian Pulley ("Brian"), Pulley's father, was the first witness to testify on Pulley's behalf. Brian testified that Pulley's car was a complete mess on February 7, 2015. He added that he knew Pulley would give different people rides to work or the grocery store.

{¶17} When Pulley's counsel attempted to ask Brian who Pulley gave rides to, the following exchange occurred between the court, the prosecutor, and defense counsel:[2]

D:  All right. Who was she giving rides to work to?

P:  Objection. One, relevance. But two, it has nothing to do with what we're doing here.

C:  Sustained. Sustained.

D:  Your Honor, I think this is relevant to who's in possession of the - - the drugs and the paraphernalia.

P:  We've already had that testimony that she was in possession of the vehicle that day.

C:  Correct. So I'm going to sustain the objection.

D:  Your Honor, is there - - is there any point in having the rest of the trial? It sounds like you've already made a ruling. If the - -

C:  I think - -

D:  If basically what we're saying is if the marijuana - - if - - and the paraphernalia is in her vehicle, then she's guilty. And I don't believe the case law supports that, your Honor. But if that's your ruling, then we might as well call an end to the hearing.

C:  It's up to you.

D:  Okay.

C:  Do what you want.

---

[2] For ease of discussion, "C" indicates when the trial court was speaking, "P" indicates when the prosecutor was speaking, and "D" indicates when Pulley's counsel was speaking.

*Id.* at p. 54. After speaking with her counsel, Pulley decided to continue with the trial.

{¶18} Brian testified that approximately a week prior to Pulley's traffic stop, Austin Hanks was a passenger in Pulley's car.

{¶19} On cross-examination, Brian testified that nobody else drives Pulley's vehicle other than her.

{¶20} Austin Hanks was the next witness to testify, but invoked his right against self-incrimination.

{¶21} Pulley was the final witness to testify. Pulley admitted that she was speeding on February 7, 2015 when she was pulled over by Trooper White. Pulley testified that she was nervous because she had just recently received a speeding ticket the previous month. Pulley stated that she was unaware that any marihuana was present in the car.

{¶22} Pulley testified that Hanks was a passenger in her car a couple of times during the week leading up to this traffic stop. She added that Hanks smokes marihuana. She explained that Hanks had indicated to her that he would admit to the possession of the marihuana and paraphernalia.

{¶23} On cross-examination, Pulley testified that she had no knowledge of anyone smoking marihuana in her car other than herself. At the conclusion of Pulley's testimony, the defense rested.

{¶24} The court found Pulley guilty on all three counts. The case proceeded immediately to sentencing. In case no. 15TRD95, the court imposed a fine of $58 and court costs. In case no. 15CRB88A, the court imposed a fine of $150 and court costs. Additionally, the court ordered that Pulley's driver's license be suspended for 180 days. Finally, in case no. 15CRB88B, the court imposed a fine of $150 and court costs. The court ordered that her license be suspended for the same 180 day period as case no. 15CRB88A.

{¶25} Upon Pulley's oral motion, the trial court stayed the execution of the sentence pending an appeal.

{¶26} Pulley filed this timely appeal, presenting the following assignment of error for our review.

*Assignment of Error*

**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT A FAIR TRIAL.**

{¶27} In her sole assignment of error, Pulley argues that she was denied a fair trial. Specifically, she argues that the trial court was biased. Pulley bases her argument on the theory that the trial court impermissibly sustained the State's objection to Brian's testimony regarding passengers in Pulley's car. According to Pulley, by doing so, the trial court had "already decided the merits of the case to the extent that [Pulley] by necessity proceeded with her futile trial solely to preserve the record for the instant appeal." Appellant's Brief, p. 11. We disagree.

**{¶28}** " 'A judge is presumed not to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption.' " *Cline v. Mtge. Electronic Registration Sys., Inc.*, 10th Dist. Franklin No. 13AP-240, 2013-Ohio-5706, ¶ 33, quoting *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-Ohio-4423, ¶ 20 (10th Dist.), citing *In re Disqualification of Kilpatrick*, 47 Ohio St.3d 605, 606 (1989) and *Eller v. Wendy's Internatl., Inc.*, 142 Ohio App.3d 321, 340 (10th Dist.2000). " 'The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes prejudice toward a party.' " *Cline* at ¶ 33, quoting *Wardeh* at ¶ 20. "A judge's rulings of law are legal issues, subject to appeal, and are not by themselves evidence of bias or prejudice." *Id.*, citing *Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 322 (8th Dist.1995).

**{¶29}** Trial courts have broad discretion in determining whether to admit or exclude evidence. *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v. Maurer*, 15 Ohio St.3d 239 (1984). Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. *Id.* A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v.*

*Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Slappey*, 3d Dist. Marion No. 9-12-58, 2013-Ohio-1939, ¶ 12.

{¶30} In the case before us, Pulley argues that the trial court's bias was evidenced by the court's decision to exclude relevant evidence regarding passengers in Pulley's car and by remarks the court made after it granted the State's objection to that testimony.

*Testimony Regarding Passengers*

{¶31} Pulley's first argument is that the trial court showed a bias by excluding the relevant testimony of Brian who was about to testify as to whom Pulley would give rides. The State objected on the grounds of relevancy, which was immediately granted by the trial court. Defense counsel argued that it was relevant because it went to who possessed the drugs and paraphernalia. The State responded that the officers had already testified that Pulley was in sole possession of the vehicle on the day in question. The trial court agreed with the State and sustained the objection.

{¶32} It is clear from the record that Pulley's defense was that the marihuana and paraphernalia belonged to Hanks. Although the identity of recent passengers could have been relevant in establishing the owner of the drugs and

paraphernalia, defense counsel initially failed to relate his line of questioning to the relevant date of the traffic stop.

{¶33} Defense counsel tried, several times, to elicit testimony from Brian to establish that Hanks had been a passenger in Pulley's vehicle in the days preceding the traffic stop. At the time the State's objection was sustained, defense counsel had failed to establish a time frame for when any passengers, including possibly Hanks, were in Pulley's car. After the State's objection was sustained, the trial court sustained several more State objections based on the same grounds. *See* Trial Tr., p. 55-57. When defense counsel tied his questions to the relevant date, Brian was able to testify that Hanks was a passenger in Pulley's car some time a week before the traffic stop.

{¶34} Because defense counsel failed to identify a time period for when passengers were in Pulley's car, the trial court did not abuse its discretion by excluding testimony at that time. Further, even if the court did err, Brian was ultimately able to testify that Hanks had been a passenger in Pulley's car. Thus, any error that may have occurred would have been harmless.

*Trial Court's Statements*

{¶35} Specifically, Pulley claims that the following exchange proved that the trial court had already decided the merits of the case:

> D: Your Honor, is there - - is there any point in having the rest of the trial? It sounds like you've already made a ruling. If the - -

C: I think - -

D: If basically what we're saying is if the marijuana - - if - - and the paraphernalia is in her vehicle, then she's guilty. And I don't believe the case law supports that, your Honor. But if that's your ruling, then we might as well call an end to the hearing.

C: It's up to you.

D: Okay.

C: Do what you want.

Trial Tr., p. 54.

{¶36} The trial court's statements "It's up to you" and "Do what you want" did not evidence a predisposition of the merits of the case. The trial court never indicated or stated that it had determined that Pulley was guilty. Rather, the trial court was responding to the comments made by defense counsel as to whether Pulley should continue with her case-in-chief. The court informed counsel that the decision as to whether to continue with its case-in-chief was up to Pulley.

{¶37} Accordingly, we overrule Pulley's sole assignment of error.

{¶38} Having found no error prejudicial to Pulley, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**