Stephenson, J.
 

 This is a conflict case. There will be no separate statement of fact herein. Such facts as are deemed essential will be stated in the opinion.
 

 The issues herein are raised by the amended petition of plaintiff below, filed March 20, 1933, and the answer of defendant below to such amended petition, filed on the same day.
 

 Maude Robison, plaintiff below, defendant in error here, sued the J. C. Penny Company, Inc., defendant below, plaintiff in error here, for damages for personal injury.
 

 In her amended petition she. alleged that the J. C. Penny Company, Inc., was a Delaware corporation; that on July 5, 1932, and for some time prior thereto the J. C. Penny Company, Inc., was engaged in operating a store on the north side of West Market street in the village of Orrville, Ohio, wherein it sold merchandise to the general public, and was in sole control and possession of such store and the appurtenances thereto; that on the fifth day of July, 1932, plaintiff was in this store as an invitee of the company, for the purpose of purchasing articles held for sale by it, and that the company had placed or caused to be placed on the first floor of the building oil or some other slippery substance, making the floor dangerous to walk over and upon, said oil or slippery substance having been placed upon the floor and left to remain there in
 
 *628
 
 a careless and negligent manner by the company. She further alleged that while she as such company’s invitee was walking over and upon such floor for the purpose of making a purchase, she slipped upon such oil or other slippery substance, and fell, striking against a step of the stairway leading from the first to the second floor of the store, causing injury as detailed by her.
 

 She alleges that the company was negligent in the following particulars:
 

 1. In placing oil or other slippery substance upon the floor and permitting it to remain thereon in such condition as to cause it to be dangerous to persons walking over and upon it;
 

 2. In failing to give plaintiff and other persons any signal or warning of the slippery or dangerous condition of the floor at the time;
 

 3. In failing, after it knew of the dangerous condition of the floor, to remove the oil or other slippery substance or to take such other action as was necessary to remove the dangerous condition in which the floor was after placing upon it the oil or other slippery substance.
 

 She alleges that such negligence of the company was the proximate cause of her slipping and falling upon the floor, whereby she was injured in the respects claimed by her and for which she prays damages.
 

 The J. C. Penny Company, Inc., for answer to Maude Robison’s amended petition, admits its corporate existence; admits that Maude Robison received some injuries, but specifically denies that she was injured in the manner and form and to the extent claimed by her.
 

 The company specifically denies it placed oil or other slippery substance on any floor of its building to the extent that it was dangerous for persons to walk thereon, and denies that it left any oil or slippery substance upon the floor in a careless and negli
 
 *629
 
 gent manner. It specifically denies that it knew of any dangerous condition of the floor by reason of the presence of oil or slippery substance, and it denies that • the floor was slippery and dangerous by reason of the presence of oil or other substance. The company says that whatever injuries Maude Robison sustained by reason of a fall, if any, were the sole and proximate result of her own negligence, and it denies each and every allegation made by Maude Robison except such as it admitted to be true.
 

 Upon these issues the parties went to trial. At the close of plaintiff’s case the company moved that the case be arrested from the jury and a verdict directed for the company.
 

 This motion was sustained and Maude Robison, by counsel, excepted to the ruling of the court. After the court had announced its ruling, but before the jury had been directed to return a verdict in favor of the company, Mr. Burt, counsel for the company stated:
 

 “Let the record show that in defendant’s opening statement, it was stated to the jury that the floor had been oiled on June 20th.”
 

 Thereupon a verdict, under the direction of the court, was returned in.favor of the company. Motion for new trial was filed in due time and overruled, and error proceedings were prosecuted in the Court of Appeals of Wayne county, which court made the finding that the Court of Common Pleas had erred in directing a verdict at the close of plaintiff’s case. The judgment of the Court of Common Pleas was thereupon reversed and the cause remanded.
 

 Thereupon the Court of Appeals, finding its judgment to be in direct conflict with the judgment of another Court of Appeals in the case of
 
 Woolworth
 
 v.
 
 Smallwood,
 
 26 O. L. R., 474, certified the case to this court for review and final determination.
 

 In a conflict case this court must read the record
 
 *630
 
 “and like it,” as from such record it must finally determine the case.
 

 This case brings us face to face with the question: What duty does a storekeeper owe to a customer shop- * ping in his store?
 

 We can start with a Chinese negative, the storekeeper is not an insurer of the safety of the customer shopping in his store.
 

 What is the legal relationship between the storekeeper and the customer while shopping in the store? Surely that of invitor and invitee, as between whom the law demands the exercise of ordinary care in view of attendant facts and circumstances.
 

 The rule is succinctly stated in 3 Cooley on Torts (4th Ed.), 186, Section 440, viz:
 

 “* * * when he [the owner or lessee] expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.”
 

 This court approved that rule in the case of
 
 Cincinnati Base Ball Club Co.
 
 v.
 
 Eno,
 
 112 Ohio St., 175, 147 N. E., 86. We now renew our covenant and again approve that rule..
 

 It must not be lost sight of that under the law the invitee who accepts an invitation owes a reciprocal duty to the invitor while on the invitor’s premises to exercise ordinary care to avoid injuring himself. In other words, the acceptance of an invitation, express or implied, does not relieve the invitee of the duty to exercise ordinary care under all the attendant facts and circumstances.
 

 We have read this record from cover to cover, not for the purpose of discovering, and if possible reconciling disputed facts, but for the single, avowed purpose of determining whether or not, at the close of
 
 *631
 
 plaintiff’s testimony in the trial court plaintiff had produced evidence from which reasonable minds could reasonably have reached different conclusions upon the question of fact of the defendant’s alleged negligence.
 

 She is entitled to the diligence of this court, for we must determine whether or not the trial court, in considering and passing upon the motion to arrest the case and direct a verdict for the defendant, construed the evidence she had introduced most strongly in her favor as required by the decision in
 
 Hamden Lodge No. 517, I. O. O. F.,
 
 v.
 
 Ohio Fuel Gas Co.,
 
 127 Ohio St., 469, 189 N. E., 246.
 

 We take it as an established fact that the floor in question was oiled on June 20, 1932, and that on July 5, 1932, Maude Robison fell on this floor. As a matter of simple calculation, fifteen full days elapsed between the application of the oil and the fall. As to the character of the oil, who applied it and how it was applied, the record is as silent as the tomb.
 

 "What evidence do we find in the record that in any wise tends to prove Maude Robison’s allegations of negligence?
 

 We find that she did fall. She says she slipped. This must be accepted as true, as it is not refuted. But what caused her to slip? Mrs. Robison testified as follows :
 

 “My left foot slipped and I fell, striking my hip on the lower step of the stairway, and striking my elbow and arm.”
 

 “And as I said, my foot slipped and I struck my elbow and hip on the step and my suffering was terrible, everything got black * * * and my heel came off in falling, the tap of my shoe was torn off of my heel. It slipped like this and went right straight out and there was a mark on the floor and Mr. Oliver called my attention to the mark where I had slipped on the floor; and then they took my shoe and took it to the
 
 *632
 
 shoe shop and had the tap put back on. * * * I slipped forward and I just come down solid.”
 

 It will be recalled at this point that Mrs. Robinson weighed two hundred and twenty pounds.
 

 “I just sat down with all my weight * this hand clear down on the floor and it was either grease or some oily substance; I had on clean light stockings but this one especially on the left foot was dirty.
 

 “Q. What do you mean by dirty? A. Was grease or oily substance, and I had on a clean light dress and it was dirty.
 

 “Q. Where? A. Over the hip where I sat on it.
 

 “Q. What kind of dirt? A. Same as on hands and stockings.
 

 “Q. You mean it was an oily substance? A. Yes, oily substance.”
 

 In these respects Mrs. Robinson is corroborated by her daughter Catherine who was with her at the time she fell. She further testified that the floor had been oiled.
 

 This is all the testimony and the only testimony that in any wise reflects on the alleged negligence of the company.
 

 Reducing the specifications of negligence to their lowest terms, they allege in effect' that:
 

 1. The company oiled its floor and made it slippery and dangerous;
 

 2. The company failed to warn plaintiff of the danger;
 

 3. That after the company knew of the danger, it was negligent in failing to remove it.
 

 All reasonable inferences must be drawn’ in favor of Mrs. Robison. Does the mere fact that some one falls on a floor produce a reasonable inference that the floor is dangerous? Is it not as reasonable to infer that the removal of the rubber tap of the heel of the shoe worn by Mrs. Robison at the time of the fall was
 
 *633
 
 the proximate cause of the slipping that produced the fall?
 

 The court is presumed to know what everybody else knows. It is a matter of common knowledge that a rubber heel is safer than sole-leather for walking on smooth surfaces. What is the probable result when one is walking on a smooth surface, relying on rubber heel taps, and suddenly loses one of them?
 

 It is likewise a matter of common knowledge that the oiling of floors is a sanitary measure. Its use allays dust and its effect is germicidal in a way.
 

 It is not the policy of the law to stand in the way of sanitary progress, and while we do not subscribe to the contention that the oiling of floors is a universal practice, we do agree that it is a quite common one.
 

 We likewise agree that a floor may be so oiled as to make it slippery and dangerous.
 

 We are impressed with the law as announced in the case of
 
 Dimarco
 
 v.
 
 Cupp Grocery Co.,
 
 88 Pa. Sup. Ct., 449, that the mere fact that the proprietor may have oiled the floor from time to time is not of itself proof of negligence and in no manner supplies a deficiency of plaintiff’s proof in this respect.
 

 Certain it is that this law fits the instant case “like a glove.” That court states in its opinion:
 

 “It is not negligence per se to have an oiled floor in a store * * * nor to apply an oil dressing to a floor if it is done in a proper manner and so as not to leave it in any different condition than is usual with oiled or polished floors.”
 

 The case of
 
 Kipp
 
 v.
 
 Woolworth & Co.,
 
 150 App. Div., 283, 134 N. Y. S., 646 (appeal dismissed, 206 N. Y., 628, 99 N. E., 1109), is much to the same effect, viz:
 

 “The defendant had a right to oil its floor in the usual way. No negligence could be predicated upon that, and unless it permitted pools of oil to form, it would not be liable simply because someone happened
 
 *634
 
 to slip upon an oiled spot, unless it had some notice of its dangerous condition. Thousands of people patronized this store every day. No one else is shown to have fallen there. No one claims that any one else ever fell by reason of the oiling of the floors * * * and the evidence does not fairly disclose any extraordinary condition; for it is difficult to spell out from the plaintiff’s testimony that there was anything more than a discoloration of a space on the floor with oil.”
 

 There is no showing in the case before us that any one ever slipped on the floor in question.
 

 The rule contended for by plaintiff in error is amply supported by
 
 Tenbrink
 
 v.
 
 Woolworth Co.
 
 (R. I.), 153 A., 245;
 
 Abbott
 
 v.
 
 Richmond County Country Club,
 
 211 App. Div., 231, 207 N. Y. S., 183;
 
 Spickernagle
 
 v.
 
 Woolworth,
 
 236 Pa., 496, 84 A., 909, Ann. Cas., 1914A., 132, and
 
 Diver
 
 v.
 
 Singer Mfg. Co.,
 
 205 Pa., 170, 54 A., 718.
 

 The case of
 
 Greyhound Lines, Inc.,
 
 v.
 
 Martin,
 
 127 Ohio St., 499, 189 N. E., 244, is very close in point of fact with this case.
 

 The case of
 
 Gibbs
 
 v.
 
 Village of Girard,
 
 88 Ohio St., 34, 102 N. E., 299, largely relied upon by defendant in error, is not in point here, as there was in that case a specific, definite defect, to wit, a two-inch off-set in the sidewalk, shown by the testimony to exist. A distinct, tangible defect was shown to exist in that case, while in the case before us pure speculation must ‘be indulged as to just what caused Mrs. Robison to slip.
 

 We agree that the right of trial by jury is guaranteed to all citizens by the Constitution of Ohio, and it cannot be invaded or violated by legislative act or judicial decree; but all this does not mean that all cases, regardless of evidentiary aspect, must be submitted to a jury. Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate wi.th the rights of citizens when no ques
 
 *635
 
 tion for the jury is involved, as it is to deny to a citizen his trial by jury when he has the right.
 

 The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Jones, Matthias, Bevis, Zimmerman and Wilkin, JJ., concur.