DECISION
On July 26, 1995, Isiah Kelley, Sr., slipped and fell in the Big Bear Store on James Road near Livingston Avenue and sustained injuries, including a fracture of his left ankle which ultimately led to the partial amputation of his left leg. On January 8, 1997, Kelley filed an action against the Scioto Investment Company, dba Big Bear Stores,[1]
alleging that Big Bear negligently failed to keep the floor of its store in a safe condition which caused him to fall and sustain injuries. Kelley also filed the action against QHG of Ohio, dba Park Medical Center, Coastal Emergency Physicians of the Midwest, dba Park Emergency Physicians and Robert Earl Bartley, III, M.D., alleging medical negligence or malpractice. On March 13, 2000, a suggestion of Kelley's death was filed and, on December 8, 2000, Ella Mae Flowers, executor of Kelley's estate ("appellant"), was substituted as party-plaintiff.
On October 14, 1997, Kelley's counsel served a notice of deposition upon all defendants to take Kelley's deposition on December 15, 1997, to perpetuate his testimony pursuant to Civ.R. 27. The deposition was rescheduled for December 30, 1997. On December 15, 1997, an order of rehabilitation was filed in Harold Duryee, Superintendent of Ins. v. The PIE Mutual Ins. Co., Franklin County Court of Common Pleas No. 97CVH12-10867. Defendant Bartley was insured by PIE and his counsel served a notice of stay of the proceedings pursuant to R.C. 3903.15. Kelley's counsel notified all defendants that he was proceeding and would be taking Kelley's deposition on December 30, 1997. On December 30, 1997, defendants moved for a protective order, which the trial court granted on January 8, 1998. Kelley's counsel took his deposition on December 30, 1997, and it was filed on November 30, 1998.
Also, on January 8, 1998, the trial court conducted a pre-trial conference. Kelley's counsel requested a ruling regarding whether Kelley's deposition was admissible. On February 11, 1998, the trial court ruled that R.C. 3903.15 mandated a stay of the proceedings and Kelley was precluded from using the deposition. On October 4, 1999, plaintiff filed a motion for reconsideration of the order prohibiting the use of Kelley's deposition, which was overruled on February 23, 2000. On March 25, 1998, Kelley voluntarily dismissed Bartley without prejudice as a party-defendant. On February 16, 1999, the action was re-filed against Bartley.
On August 21, 2000, appellant filed a motion for an order to admit statements of Kelley made prior to his incompetency and death to rebut the testimony of adverse parties pursuant to Evid.R. 804(B)(5). On December 8, 2000, appellant filed a second motion for reconsideration of the court's order prohibiting the use of Kelley's deposition, affidavit and interrogatories. On December 12, 2000, both of these motions were overruled.
On December 7, 2000, the trial court granted the summary judgment motions of QHG of Ohio, Inc., dba Park Medical Center, Coastal Emergency Services and Bartley. Thus, Big Bear was the remaining defendant. On December 13, 2000, a bifurcated trial commenced and, at the close of appellant's evidence, the trial court directed a verdict for Big Bear. Appellant filed a notice of appeal and raises the following assignments of error:
 The trial court erred in directing a verdict for defendant, The Penn Traffic Company, dba Big Bear Stores (Big Bear), at the close of plaintiff's case-in-chief and in entering final judgment for Big Bear against plaintiff.
 The trial court erred in denying plaintiff's motion to admit into evidence statements made by decedent, Isiah Kelley, Sr., in his affidavit and in his deposition, which statements rebutted testimony of Big Bear and were therefore admissible under Ohio R. Evid. 804(B)(5).
 The trial court erred in ruling that as a matter of law plaintiff was precluded from presenting prior testimony of Big Bear's assistant manager in plaintiff's case-in-chief.
 The trial court erred in granting defendant Big Bear's motion for protective order precluding the use of the deposition of decedent, Isiah Kelley, Sr., taken on December 30, 1997, and erred in denying plaintiff's motions to modify or reconsider that order.
By the first assignment of error, appellant contends that the trial court erred in granting a directed verdict for Big Bear. Civ.R. 50(A)(4) governs the standard for directed verdicts and provides that:
 * * * When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
In ruling on a motion for a directed verdict, a trial court is required to construe the evidence most strongly in favor of the nonmovant. Civ.R. 50(A)(4); Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. The motion must be denied where there is substantial evidence to support the nonmoving party's case and reasonable minds may reach different conclusions. Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271,275. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon the motion. Id. A motion for directed verdict tests whether the evidence presented is legally sufficient to take the case to the jury. Wagner v. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 294.
Appellant filed this action alleging that Big Bear negligently failed to keep the floor of its store in a safe condition which caused Kelley to fall and sustain serious injuries. To prevail upon a claim of negligence, appellant was required to prove by a preponderance of the evidence that Big Bear owed Kelley a duty of care, that it breached that duty, and that the breach proximately caused his injuries. "Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." Simmers v. Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 645. Appellant and Big Bear agree that Kelley was a business invitee of Big Bear.
"[B]usiness invitees are those persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." Baldauf v. Kent State Univ. (1988),49 Ohio App.3d 46, 47. An owner or occupier of premises owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203 . However, a business owner is not an insurer of a customer's safety. Paschal.
An owner or occupier of property has a duty to warn a business invitee of unreasonably dangerous latent conditions that a business invitee cannot reasonably be expected to discover. A latent danger is "a danger which is hidden, concealed and not discoverable by ordinary inspection, that is, not appearing on the face of a thing and not discernible by examination." Potts v. Smith Constr. Co. (1970), 23 Ohio App.2d 144,148. Premises are not considered unreasonably dangerous where the defect is "so insubstantial and of the type that passersby commonly encounter." Baldauf, at 49.
An owner or occupier of property owes no duty to warn invitees of open and obvious dangers on the property. Simmers, at 644, citing Sidle v. Humphrey (1968), 13 Ohio St.2d 45. The rationale behind the doctrine is that the "open and obvious nature of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." Anderson v. Ruoff (1995),100 Ohio App.3d 601, 604, citing Simmers, supra. Such "open and obvious" hazards are those that are neither hidden or concealed from view nor nondiscoverable by ordinary inspection. Parsons v. Lawson Co. (1989),57 Ohio App.3d 49, 50-51. "The determination of the existence and obviousness of a danger alleged to exist on a premises requires a review of the facts of a particular case." Miller v. Beer Barrel Saloon (May 24, 1991), Ottawa App. No. 90-OT-050, unreported. If there is no duty, the premises owner cannot be found to be negligent. Anderson, supra.
In Guilford v. Central Hardware Co. (1989), 62 Ohio App.3d 58, 60-61, the court stated that there is a distinction between whether a hazardous condition was created by the owner of the premises or by a third-party. When an injury arises from a slip-and-fall due to a hazardous condition not created by the owner of the premises, the plaintiff must demonstrate that the owner had, or in the exercise of reasonable care should have had, notice of the hazardous condition. Plaintiff has the duty to demonstrate that defendant had actual knowledge of the hazard and neglected to remove it, or that the hazard existed for such a sufficient time that the failure to warn against it or remove it constituted a breach of ordinary care. Johnson v. The Wagner Provision Co. (1943),141 Ohio St. 584, paragraph three of the syllabus. If no evidence of actual notice is provided, a plaintiff must provide evidence as to the length of time the hazard existed to support an inference that the defendant had constructive knowledge. Presley v. Norwood (1973),36 Ohio St.2d 29, 32. The plaintiff must present sufficient evidence to indicate that the condition existed for a sufficient time to justify the inference that the failure to warn against it or remove it was a breach of ordinary care. Presley, at 32, citing Johnson. However, if the hazardous condition was created by the owner of the premises, a plaintiff is not required to show specifically that the defendant had knowledge or notice of the condition. Tandy v. St. Anthony Hospital (Nov. 29, 1988), Franklin App. No. 88AP-551, unreported.
The mere fact that a person slipped and fell, standing alone, is not sufficient to create an inference that the floor was unsafe or to establish negligence, there must be evidence showing that some negligent act or omission caused the plaintiff to slip and fall. Eller v. Wendy's International, Inc. (Sept. 29, 2000), Franklin App. No. 99AP-1273, unreported, at 7, citing The J.C. Penny Co., Inc. v. Robison (1934),128 Ohio St. 626, paragraph four of the syllabus. "To establish negligence in a slip and fall case, it is incumbent upon the plaintiff to identify or explain the reason for the fall." Stamper v. Middletown Hosp. Assn. (1989), 65 Ohio App.3d 65, 67-68, citing Cleveland Athletic Assn. Co. v. Bending (1934), 129 Ohio St. 152. A finding of negligence is precluded when the plaintiff, either personally or with the use of outside witnesses, cannot identify what caused the fall. Stamper, at 68.
In this case, the only testimony at trial was that of the Big Bear employee working at the deli at the time of Kelley's fall, Tina Hill. Hill testified on direct examination that she did not see, but did hear Kelley fall. She did not know what Kelley had slipped on but did discover that the floor was wet. She believed that the water came from either an ice bin or a cooler that was leaking. On cross-examination, Hill testified that the water on the floor could have come from a number of sources, including possibly rain tracked inside, although Hill could not remember the weather that day, from the coffee station nearby, or a customer drinking water could have spilled it. Hill testified she did not know the source of the water or how long the floor had been wet. On re-direct, appellant's counsel attempted to eliminate other possible sources but when the trial court asked Hill directly whether she knew the source of the water, she replied:
 No, I don't know exactly where it came from, if it came from the ice cream case, or, you know, leaking from the bottom of it or if it came from the bin from someone picking the products out of the bin and ice dropping on the floor. [Tr. at 33.]
Then the court continued questioning her and asked:
 So I'm just trying to get clear in my mind what your final testimony is here. Do you know where the water came from? At least you don't know where the water came from or do you believe your testimony now, that you believe it came from either one case or the other?
 THE WITNESS: I believe it came from either one case or the other. There was no bottles laying there. [Tr. 35.]
Although appellant attempts to argue that this testimony is clear in defining the source of the water, it is only clear that Hill did not know the source of the water. While she speculated that the source was one of two possible sources, she did not know the source or how long the water had been on the ground. As stated above, a plaintiff must provide evidence showing that some negligent act or omission caused the plaintiff to slip and fall and a finding of negligence is precluded when the plaintiff, either personally or with the use of other witnesses, cannot identify what caused the fall. Even construing the evidence most strongly in appellant's favor, the evidence presented was not sufficient to take the case to the jury and the trial court did not err in granting a directed verdict for Big Bear. Appellant's first assignment of error is not well-taken.
By the second, third and fourth assignments of error, appellant contends that the trial court erred in denying appellant's motion to admit statements made by Kelley in his affidavit and deposition, and erred in ruling that, as a matter of law, appellant was precluded from presenting prior testimony of Big Bear's assistant manager in plaintiff's case-in-chief. These assignments of error shall be addressed together.
Appellant argues that the trial court erred in several rulings: that appellant was precluded from using Kelley's deposition because it was taken while the stay order was in effect from Harold Duryee, Superintendent of Ins., pursuant to R.C. 3903.15; that the trial court precluded the use of Kelley's affidavit and deposition to rebut statements of the deposition testimony of Big Bear's assistant manager, Greg Merritt; and that the trial court erred in overruling her motions for reconsideration.
Appellant had filed a motion on August 21, 2000, for an order to admit statements of Kelley made prior to his incompetency and death to rebut the testimony of Merritt, pursuant to Evid.R. 804(B)(5), and the trial court overruled this motion. Shortly before trial, Merritt died and now appellant is claiming that the trial court also precluded the use of Merritt's deposition testimony.
Even assuming that appellant is correct and the trial court erred in precluding Kelley's affidavit and deposition and Merritt's deposition,[2]
the testimony appellant seeks to introduce does not help identify the source of Kelley's fall. Kelley testified that he slipped on a two-and-one-half to three-inch pile of green jello parfait and Merritt testified that Kelley told him Kelley slipped on a grape. Even if admitted, the testimony does not help appellant but, rather, weakens his case by providing more speculation as to the source of Kelley's fall. Appellant's assignments of error are not well-taken.
For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 ___________________ BOWMAN, J.
PETREE and LAZARUS, JJ., concur.
[1] The complaint improperly identified Scioto Investment Company as a defendant and should have identified The Penn Traffic Company, Big Bear Stores Division. The parties stipulated that subsequent pleadings would identify defendant as "The Penn Traffic Company, Big Bear Stores Division" in place of "The Scioto Investment Company" rather than filing an amended complaint. See Stipulation Apr. 2, 1997.
[2] Big Bear argues that the trial court did not err because, although the trial court had precluded the use of the depositions in appellant's case-in-chief pursuant to Evid.R. 804(B)(5), at the time of the ruling, the trial court was not aware that Merritt had died and appellant did not seek to use the deposition at trial pursuant to Civ.R. 32(A)(3).