OPINION
In this accelerated calendar case, appellant, Loretta Spatar, appeals from the decision of the Trumbull County Court of Common Pleas, granting appellee, Avon Oaks Ballroom ("the ballroom"), summary judgment on appellant's claim for negligence.[1]
On the evening of October 22, 1997, appellant, a seventy-three year old woman, was a patron of the ballroom, which she frequented. While attempting to walk off the dance floor, appellant slipped and fell, thereby sustaining a fractured hip.
As a result of this slip and fall, on September 29, 1999, appellant filed a complaint against appellee in the Trumbull County Court of Common Pleas. Therein, appellant claimed that her fall was "proximately caused by a foreign substance that had been there for a sufficient period of time that it should have been swept or mopped up to prevent injury." Further, as a result of previous falls that occurred on the dance floor, appellant alleged that appellee was on notice of the likelihood of injury, and that their failure to adequately light the ballroom contributed to her injuries.
On August 9, 2000, appellee filed a motion for summary judgment arguing that even if appellant could present evidence tending to show that she fell because the floor was waxed and slippery, there is no evidence that appellee failed to keep the premises in a reasonably safe condition. Further, appellee suggested that there was no evidence as to what caused appellant to slip and fall. Rather, appellant could only speculate that she might have fallen because the floor was slippery or there could have been food/wax on the floor.
In turn, on October 10, 2000, appellant filed a memorandum in opposition to appellee's motion for summary judgment, claiming that a properly maintained floor could have prevented the fall. Appellant suggested in the memorandum that wax was applied onto the dance floor in a haphazard and sporadic manner, thus creating a hazardous conditions that foreseeably would cause a patron to slip and fall.
Appellant also suggested that poor lighting created a hazardous condition that contributed to her fall, and that prior falls put appellee on notice that its method of maintaining the floor created a hazardous condition and would cause a reasonable person to reconsider the method of maintaining the floor to prevent additional falls.
To support her position, appellant submitted her affidavit and deposition testimony, along with the deposition testimony of Mr. Revella, the owner of the ballroom. She also included appellee's answer to appellant's request for production of documents and appellee's response to interrogatories.
In turn, on November 1, 2000, appellee filed a brief in reply to appellant's brief in opposition to summary judgment, suggesting that appellant's affidavit contradicted her deposition testimony, and that the affidavit was insufficient to oppose summary judgment because it merely contained appellant's opinion. In support of its position, appellee submitted portions of Mr. Revella and appellant's deposition testimony.[2]
After taking the matter under advisement, on May 11, 2001, the trial court granted appellee's motion for summary as to appellant's claim. It is from this judgment appellant appeals, advancing four assignments of error and reiterating the arguments set forth in her memorandum in opposition to appellee's motion for summary judgment:
 "[1.] The trial court erred to the prejudice of appellant in granting summary judgment since defendant created a dangerous condition [and] breached its duty of care owed to appellant by improperly and negligently maintaining the dance floor herein which does not require actual or constructive notice to defendant/appellee[.]
 "[2.] The trial court erred in granting summary judgment in that there have been prior falls at the Avon Oaks Ballroom that placed defendant on notice that the defendant's method of maintaining the floor created a hazardous condition[.]
 "[3.] The trial court erred to the prejudice of appellant in granting summary judgment to appellee since a material issue of fact exists concerning the creation [and] maintenance of a hazardous condition due to dim/inadequate lighting[.]
 "[4.] The trial court erred to the prejudice of appellant in granting summary judgment to appellee since the affidavit attached to appellant's memorandum in opposition to appellee's motion for summary judgment was not inconsistent with her previous oral deposition testimony but clarified, expanded upon [and] amplified it[.]"
Before addressing the merits of appellant's assignments of error, we will lay out the appropriate standard of review.
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389; Leibreichv. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268, 1993-Ohio-12; Bosticv. Connor (1988), 37 Ohio St.3d 144, 146.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner,67 Ohio St.3d 337, 340, 1993-Ohio-176, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340
A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresherv. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
For organizational purposes, we will begin with the fourth assignment of error. Therein, appellant maintains that the trial court erred when in concluded that her affidavit contradicted her deposition testimony. Thus, appellant seems to suggest that the trial court should have considered the affidavit as evidentiary material.
The reason relied upon by the trial court was that the affidavit failed to create a dispute as to any issue of material fact. We agree.
In Barile v. East End Land Development (Dec. 23, 1999), 11th Dist. No. 98-L-149, 1999 WL 1313639, at 7, this court determined that a party may not create a factual issue by simply filing an affidavit that contradicts his/her earlier deposition testimony:
 "We * * * hold that a non-moving party cannot defeat a motion for summary judgment by submitting an affidavit which without explanation, directly contradicts his/her previous deposition testimony. As we noted in McCain, if it is inappropriate to grant summary judgment in favor of a person who submits an affidavit which contradicts the affiant's earlier testimony per Turner, `[i]t would be equally inappropriate to allow an opposing party to defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit.' [Emphasis sic.] McCain at 2.
 "Moreover, there is no logical reason to allow a person who has been examined in deposition to raise an issue of fact simply by submitting an affidavit which contradicts his/her earlier testimony. Parties to litigation should not be allowed to thwart the purpose of Civ.R. 56 by creating issues of fact. If this were permitted, the utility of summary judgment as a valuable procedure for screening out sham factual issues would be greatly undermined. Franks v. Nimmo
(C.A.10, 1986), 796 F.2d 1230, 1237.
"* * *
 "Our conclusion here is not meant to act as an absolute bar to a trial court's consideration of every contradictory affidavit filed in opposition to summary judgment. For example, an exception is recognized in situations where the affiant can provide a legitimate reason for the conflict, such as confusion or a lack of access to the material facts. Williams v. American Mut. Life Ins. Co. (Dec. 6, 1996), Trumbull App. No. 96-T-5478, unreported, at 4, 1996 WL 760908, citing Bulishak v. Finast Supermarkets (Mar. 19, 1992), Cuyahoga App. No. 62301, unreported."
In the instant matter, appellant attempts to argue that her affidavit is not inconsistent with her previous deposition testimony; rather, the affidavit clarified, expanded upon, and amplified her deposition testimony. We disagree.
Even though appellant was specifically asked during her deposition why she fell, appellant seemed uncertain as to what caused her to slip and fall on the dance floor. As such, she theorized that there were variousreasons as to why she may have fallen:
 "Q. My question is why did you fall down, if you know?
"A. Because the floor must have been slippery.
"Q. Okay.
"A. You wouldn't have fallen if it wasn't slippery.
"Q. Do you know
 "A. And it was dark, you couldn't see if there was anything on the floor.
 "Q. That's my next question, you don't know there's something on the floor or not, you didn't see anything?
"A. No, it was too dark.
"* * *
 "Q. Do you think anything anybody at the Avon Oaks Ballroom did or did not do back on October 22, 1997, led to your fall?[3]
 "A. Well, sometimes the wax is more than — sometimes they have more wax on the floor than other times and the floor becomes very slippery different times.
"* * *
 "Q. Other than that, do you think anything that anyone did or did not do that night in any way contributed to your fall?
 "A. It was dark, you can't see, so I don't know if there was anything else there. There might have been, there could have been, let's just say that.
"* * *
 "Q. Okay. Other than the possibility that there was something on the floor that you couldn't see, and the possibility that the floor must have been slippery due to waxing, do you think anything else that someone associated with Avon Oaks Ballroom did or did not do that night may have led in any way to your fall?
 "A. There could have been food there; they bring cookies and birthday cakes.
 "Q. But you don't have any personal knowledge of that that there was food on the floor?
"A. Like I said, I wasn't looking, I didn't know."
(Emphasis added.)
Thus, during her deposition, appellant theorized as to the possible causes of her fall, to-wit: that the floor must have been slippery or there may have been food or wax on the floor. However, in her affidavit, appellant now opined that she was "certain that [her] fall on the floor surface was due to the extremely slippery surface * * *." This statement is inconsistent with her deposition testimony as she stated therein that she may have fallen for a number of reasons.
Under these circumstances, it was appropriate for the trial court to find that appellant's affidavit contradicted her earlier deposition testimony. Accordingly, appellant's fourth assignment of error is meritless.
A further reason that the affidavit failed to create any dispute as to an issue of material fact is found in our analysis of the remaining assignments of error. To summarize, appellant's affidavit contained only conclusory statements, statements which failed to demonstrate proximate cause, and statements which were unsupported personal opinion.
For example, in the first assignment of error, appellant contends that appellee created the hazardous condition of a slippery dance floor by not implementing a uniform maintenance policy, and by haphazardly tossing wax onto the dance floor.
Appellee counters, in part, by maintaining that appellant was unable to precisely explain the reason for her fall. In a slip and fall case, it is incumbent upon the plaintiff to "identify or explain the reason for the fall." Stamper v. Middletown Hosp. Assn. (1989), 65 Ohio App.3d 65,67-68, citing Cleveland Athletic Assn. Co. v. Bending (1934),129 Ohio St. 152. If, however, the plaintiff is unable to identify the cause of the fall, then "a finding of negligence on the part of the defendant is precluded." Stamper at 68.
As previously mentioned, during her deposition, appellant provided various reasons as to why she may have fallen, such as a slippery floor or food/wax on the floor. Accordingly, we determine that appellant was able to provide adequate explanations as to the reason for her fall.
Returning to appellant's argument, the parties do not dispute that appellant was a business invitee, that is "`one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest.'" Bowins v. Euclid Gen. Hosp. Assn. (1984),20 Ohio App.3d 29, quoting Scheibel v. Lipton (1951), 156 Ohio St. 308, paragraph one of the syllabus.
In Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 204, the Supreme Court of Ohio explained that a business entity owes an invitee a duty of reasonable care:
 "A shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. See Campbell v. Hughes Provision Co. (1950), 153 Ohio St. 9 * * *. A shopkeeper is not, however, an insurer of the customer's safety. Further, a shopkeeper is under no duty to protect business invitees from dangers `which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.' Sidle v. Humphrey
(1968), 13 Ohio St.2d 45 * * *, paragraph one of the syllabus." (Parallel citations omitted.)
Thus, in the instant matter, we must determine whether, in constructing the evidence most favorably to appellant, reasonable minds could find that appellee breached its duty of reasonable care when it maintained and applied wax onto the dance floor.
Turning to the evidence adduced below, the record indicates that Mr. Revella has owned the ballroom since 1965, and that he obtained help from his family to run the business. The facility is used primarily for ballroom dancing and wedding parties.
During his deposition, Mr. Revella explained that normally, the day of a dance or the day before a dance, his daughter applies wax to the hardwood dance floor, which causes the floor to be slippery:
"Q. How do you maintain the floor?
 "A. We don't add anything to it. We put a little wax on, when the people start dancing, just sprinkle it around a little bit. And the people maintain it themselves. I have no nothing I put on there, no further — nothing chemical. "Then, after the dance, it's got a big, wide mop, all the wax is taken off the floor.
"Q. So you put the wax on before a dance begins?
"A. Before they dance.
 "Q. Is that during the course of any evening that the dances —
 "A. Well, it all depends. When they get done cleaning up, they — that's the last part of the job; they wax the floor. They just sprinkle it around certain areas.
"Q. Who sprinkles the wax around?
"A. My daughter.
"Q. Do they use a mop, or they just —
"A. No, no, we —
"Q. Tell me how you do it.
 "A. Well, they've got cans — I should say maybe a little double-header whiskey glass full, and they walk around just toss it like you're feeding the chickens. And it's four times on one side; four on the other side and about three in the middle, just walking and just swing it.
 "Q. Oh, you just kind of just pour it and throw it on the floor?
 "A. Yeah, just like you're feeding chickens, kind of spread it out a little bit so it wouldn't be in one spot.
"Q. And what's the purpose of doing that?
 "A. So the people make the floor more slippery for the people to dance.
"Q. Okay. That helps them dance.
"A. Yes.
 "Q. You say you do that just before the dances start?
 "A. No, I said when they're done cleaning up, you know, where — usually it's done a couple days before, whenever they clean up.
 "Q. And what do you mean by `cleaning up,' you mean the day before? Tell me what you mean by that; I'm not quite sure.
 "A. Well, after the dance, like I mentioned, my daughter goes in there and cleans up. What she has to do is clear all the tables off and put everything in garbage cans and take them out. "Then, she washes the tables and ashtrays, sets the chairs back in place, sweeps the dance floor with a big, wide mop, and then after that, she'll go around, and she'll wax it.
 "Q. Okay. And this is at the end of a day that you're open for dancing?
 "A. No, she doesn't go up until, maybe, the next day or the day after.
 "Q. Would she do this the day of the facility being open for dancing?
"A. Sometimes, if —
"Q. Okay.
"A. — it gets a little behind, yes.
"* * *
 "Q. Okay. But you're saying, normally, you put this wax on earlier that day or the day before —
"A. Right.
"Q. — a dance —
"A. Right.
 "Q. — the day of the facility being open for dancing?
"A. Uh-huh."
In turn, appellant claims that the slipshod application of wax by appellee was unorthodox and unsafe and caused an unnatural accumulation of wax on some portions of the dance floor, thereby causing her to slip and fall.
As to this point, the Supreme Court of Ohio has stated that a business owner is not liable to a patron who slips and falls on the floor treated with a "dressing" so long as such dressing is applied and maintained in a customary manner:
 "It is not negligence per se to have an oiled floor in a store. If the floor dressing is applied and maintained in a proper manner there is no liability to a patron who slips and falls on such floor." Boles v. Montgomery Ward Co. (1950), 153 Ohio St. 381, 384. See, also, Burkhead v. Eesley (1958), 107 Ohio App. 519, 522.
Further, in J.C. Penny Co. v. Robison (1934), 128 Ohio St. 626, the Supreme Court acknowledged the following:
 "2. While the oiling of floors in storerooms is by no means a universal practice, it is quite common, and it is not negligence per se, to have an oiled floor in a storeroom; the duty on the part of the storekeeper towards his customers in reference thereto being the exercise of ordinary care in the application of the oil to the floor, and the maintenance of the floor thereafter.
 "3. The standard would be that degree which persons of ordinary care and prudence are accustomed to use in oiling the floor of a storeroom and maintaining such floor in its oiled condition, having due regard to the rights of others and the objects to be accomplished.
 "4. In an action for personal injury, brought by a customer against a storekeeper, predicated upon the alleged negligence of the storekeeper in oiling and maintaining a floor in such storeroom in a dangerous condition, it is not enough to produce testimony showing that the customer slipped and fell on an oiled floor in such storeroom. There must be testimony tending to show that some negligent act or omission of the storekeeper caused the customer to slip." (Emphasis added.) See, also, Eller v. Wendy's Internatl., Inc. (2000), 142 Ohio App.3d 321, 334-335.
Thus, the mere fact that a floor has been waxed is not sufficient to establish negligence:
 "[R]easonable mind could not find that a waxed floor alone creates a dangerous condition and that the information that a person other than the plaintiff also slipped on the same waxed floor prior to the plaintiff's slip and fall is insufficient to establish that the business has `violated its duty to maintain the premises in a reasonably safe (as opposed to perfectly safe) condition." Shelmon v. Damon's Toledo, Inc. (July 28, 1995), 6th Dist. No. L-95-005, 1995 WL 444378, at 2. See, also Colletti v. J.C. Penny Co., Inc. (Mar. 3, 1993), 10th Dist. No. 92AP-1605, 1993 WL 69438, at 2.
Rather, it must appear that the wax was improperly applied and/or maintained. Boles at 384; Robison at paragraph three of the syllabus;Burkhead at 527. Thus, in order to survive a summary judgment exercise, appellant had to produce evidence tending to show negligence on the part of appellee so as to create a genuine issue of material fact. Appellant failed to do so.
For instance, even if the content of appellant's affidavit were considered, she did not present evidence identifying the customary method used to maintain and apply wax on a dance floor and that appellee failed to adhere to such a standard. Rather, appellant simply stated the following in her affidavit:
 "5. I fell on a slippery surface that was more slippery than it needed to be for ballroom dancing.
 "6. [T]he floor surface has not been properly maintained in that there was uneven bunches of wax that accumulated over the floor that made it excessively slippery beyond what was needed for ballroom dancing." (Emphasis added.)
However, appellant does not describe how she came to these particular conclusions. "[A]ffidavits submitted in a summary judgment exercise must contain more than conclusory statements. Affidavits must also contain a recitation of the operative facts which give rise to such a conclusory statement." Burkholder v. Straughn (June 26, 1998), 11th Dist. No. 97-T-0146, 1998 WL 553623, at 4. See, also, Evanoff v. Ohio Edison Co. (Nov. 10, 1994), 11th Dist. No. 93-P-0015, 1994 WL 652635, at 11.
Furthermore, the affidavit failed to indicate that the statements were based on appellant's personal knowledge. See Civ.R. 56(E). Therefore, appellant's conclusory opinions that the dance floor was more slippery than it needed to be for ballroom dancing and that the floor surface was improperly maintained because it contained uneven bunches of wax is insufficient to create an issue of material fact. As such, appellant did not produce adequate evidence tending to show that appellee's maintenance techniques or method of applying wax was improper to create a genuine issue of material fact. Accordingly, appellant's first assignment of error is without merit.
In the second assignment of error, appellant submits that in response to an interrogatory and during his deposition, Mr. Revella admitted that there had been approximately five other occasions where people have fallen on the dance floor. From this, appellant concludes that appellee "had actual and constructive notice of an inherently dangerous condition by the method of placing the wax on the dance floor that foreseeably would not only cause the injuries that [appellant] sustained but that already produced other falls that only by coincidence had not resulted in serious injury until [appellant's] mishap." (Emphasis sic.)
Prior to appellant's incident in 1997, Mr. Revella indicated that since he has owned the ballroom facility, approximately five people have fallen on the dance floor. However, there was no evidence presented as to whatcaused the other individuals to fall. Appellant merely infers that it was due to the allegedly improper waxing of the dance floor. Yet, there is noevidence in this regard.
It is unreasonable, without any other evidence, to conclude or even infer that merely because five other people have fallen in the ballroom that is was due to wax on the dance floor. Therefore, appellant's second assignment of error is meritless.
In the third assignment of error, appellant contends that reasonable minds may differ as to whether dim lighting created a hazardous condition that contributed to her fall since she could not clearly see any obstructions, build-up of wax or any other substance on the floor.[4]
During her deposition, appellant testified to the following:
 "Q. My question is why did you fall down, if you know?
"A. Because the floor must have been slippery.
"Q. Okay.
"A. You wouldn't have fallen if it wasn't slippery.
"Q. Do you know —
 "A. And it was dark, you couldn't see if there was anything on the floor.
 "Q. That's my next question, you don't know there's something on the floor or not, you didn't see anything?
"A. No, it was too dark.
"* * *
 "Q. Do you think anything anybody at the Avon Oaks Ballroom did or did not do back on October 22, 1997, led to your fall?
 "A. Well, sometimes the wax is more than — sometimes they have more wax on the floor than other times and the floor becomes very slippery different times.
"* * *
 "Q. Other than that, do you think anything that anyone did or did not do that night in any way contributed to your fall?
 "A. It was dark, you can't see, so I don't know if there was anything else there. There might have been, there could have been, let's just say that." (Emphasis added.)
While appellant seems to believe that the above testimony proves that an issue of material fact exists as to whether the dim lighting on the dance floor caused and/or contributed to the fall, we believe otherwise. Rather, appellant's deposition testimony indicates that she could not see if there was a foreign substance on the floor due to the dim lighting. She never expressly stated that the dim light caused and/or contributed to her fall.
In fact, in her affidavit, appellant averred that due to the lighting conditions, she could not see whether she fell on a foreign substance. This is not the same as saying that the dim lighting caused and/or contributed to the fall:
 "7. * * * While the dark conditions might have been nice for ambience, it was not safe as I would learn the hard way when I slipped and fell and suffered serious injuries as a result. On the date that I fell at the ballroom on the wooden dance floor, the ballroom was dimly lit. I could not see whether I also fell on a foreign substance or liquid, in addition to the slippery floor, due to the extremely dark conditions." (Emphasis added.)
While appellant stated that the lighting on the dance floor was dim, she failed to demonstrate that such lighting caused and/or contributed to the fall. Therefore, no issue of material fact exists as to this point. Accordingly, appellant's third assignment of error is not well-taken.
Based on the foregoing analysis, appellant's four assignments of error are meritless, and the judgment of the trial court is affirmed.
ROBERT A. NADER, J., DIANE V. GRENDELL, J., concur.
[1] As an aside, we note that Albert Revella ("Mr. Revella"), the owner of the ballroom, was not named as a party to the action.
[2] As an aside, we note that appellant's and Mr. Revella's depositions were filed with the trial court.
[3] We note that during the deposition, appellant's counsel objected to this question on the basis that it called for appellant to provide a legal conclusion. Despite that fact, appellant referred to this portion of the testimony in her memorandum in opposition to summary judgment and appellate brief.
[4] Appellant points out that in the May 11, 2000 judgment entry, the trial court "never even raise[d] dim lighting as an issue to consider * * *." While the trial court may not have specifically discussed the issue of dim lighting in its judgment entry, the trial court nevertheless found appellant's memorandum in opposition to appellee's motion for summary judgment, which addressed the issue of lighting conditions on the dance floor, without merit. Presumably, the trial court considered and later rejected the theory that dim lighting was a contributing factor to the fall when it granted appellee's motion for summary judgment.