[Cite as *Cole v. Sylvester's North End Grille*, 2021-Ohio-502.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DONALD E. COLE, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| SYLVESTER'S NORTH END GRILLE, et al., | : | Case No. 2020CA00089 |
| | : | |
| Defendants - Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
of Common Pleas, Case No. 2019-
CV-01500

JUDGMENT:                                        Affirmed

DATE OF JUDGMENT:                       February 23, 2021

APPEARANCES:

For Plaintiff-Appellant                         For Defendants-Appellees

STACIE L. ROTH                                 JAMES J. IMBRIGIOTTA
Schulman, Roth & Associates, CO., L.P.A.     Glowacki, Imbrigiotta & Doucette, LPA
The Carnegie Building                         7550 Lucerne Drive, Suite 408
236 3rd Street SW                             Middleburg Heights, Ohio 44130
Canton, Ohio 44702

*Baldwin, J.*

**{¶1}** Plaintiff-appellant Donald Cole appeals from the June 5, 2020 Judgment Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendants-appellees.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellee Nicholas Sylvester is the owner of appellee Sylvester's North End Grille. This case arises out of a slip and fall that occurred at appellees' restaurant on April 25, 2018. On such date, appellant was a delivery driver making deliveries at the rear entrance of the restaurant. Appellant entered the premises at around 10:00 a.m. wheeling a two-wheeled hand cart. The cart held three heavy boxes of pop-syrup. While there was a trash can and various empty boxes stacked just inside the delivery entrance, appellant, during his deposition, testified that there was "enough room for me to squeeze through there." Appellant's deposition at 34. He did not have to move anything out of his way to enter the premises.

**{¶3}** When he pushed his hand cart up a small incline ramp, appellant, at approximately 10:00 a.m., slipped on the ceramic tile and his cart started to go forward. Appellant grabbed on the door and fell down. He testified that the area was "extremely slippery." Appellant's deposition at 28. He testified that he did not observe anything about the floor before he entered, that he made sure that there was a clear path for him to make his delivery, and that he did not observe any foreign substance on the floor. Appellant testified that the floor was not greasy when he first came in, but "I slipped on it, so it was greasy." Appellant's Deposition at 51. He testified that what he later determined to be grease on the floor caused him to slip.

{¶4} Freddie Edwards has worked at Sylvester's for 10 years and it is his job to clean the premises. He gets at Sylvester's at 6:00 a.m. and leaves at around 2:00 p.m. During his deposition, he testified that, after sweeping the floor, he then puts degreaser down and scrubs the ceramic floor. Edwards testified that he uses a cleaning product called Breaker-Breaker to break up the grease. Breaker-Breaker creates a foam that is scrubbed with a bristle brush. Edwards then mops the floors to get the degreaser and water up and rinses them using a clean mop with clean water. He testified that he had more than two mops. While one is used in the front of the house, two others are used in the back of the house. He testified that he used the same mops and buckets in the delivery area that he used in the kitchen area. Edwards typically has the floors cleaned and dried by 7:00 a.m. before deliveries usually began. He testified that he cleaned the delivery area after he cleaned the kitchen area. The last area that he cleaned was the delivery area. He testified that if spills back in the delivery area were brought to his attention, he would clean the area.

{¶5} Dawn Herchenroeder, who is a prep cook at the restaurant and pays the bills, testified that she normally worked from 7:00 a.m. to 2:00 p.m. She testified that she arrived at her normal time on the day of the incident and worked in the kitchen adjacent to the rear entrance. She walked through that area first thing every morning in order to retrieve the checkbook from the basement so that she could pay any delivery drivers who came in that morning.

{¶6} On July 23, 2019, appellant filed a premises liability complaint against appellees Nicholas Sylvester and Sylvester's North End Grille aka Sylvester's North End Italian Grille. Appellees filed an answer to the complaint on September 19, 2019. On

March 31, 2010, appellees filed a Motion for Summary Judgment and appellant filed a memorandum in opposition to the same on May 1, 2020. Appellees filed a reply brief on May 8, 2020.

**{¶7}** Pursuant to Judgment Entry filed on June 5, 2020, the trial court granted appellees' Motion for Summary Judgment.

**{¶8}** Appellant now appeals, raising the following assignment of error on appeal:

**{¶9}** "I. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT."

I

**{¶10}** Appellant, in his sole assignment of error, argues that the trial court erred when it granted appellees' Motion for Summary Judgment. We disagree.

**{¶11}** With regard to summary judgment, this Court applies a de novo standard of review and reviews the evidence in the same manner as the trial court. *Smiddy v. Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). We will not give any deference to the trial court's decision. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist. 1993). Under Civ.R. 56, a trial court may grant summary judgment if it determines: (1) no genuine issues as to any material fact remain to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1997).

**{¶12}** The record on summary judgment must be viewed in the light most favorable to the party opposing the motion. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 151, 309 N.E.2d 924 (1974).

**{¶13}** This is a negligence action. In order to establish actionable negligence, a plaintiff must prove (1) the defendant owed him a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

**{¶14}** The parties agree that appellant was a business invitee of appellees. Business owners owe business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* 18 Ohio St.3d 203, 480 N.E.2d 474 (1985) , citing *Campbell v. Hughes Provision Co.* , 153 Ohio St. 9, 90 N.E.2d 694 (1950). However, a business owner is not an insurer of a customer's safety or against all types of accidents that may occur on its premises. *Paschal, supra.* No presumption or inference of negligence arises from the mere happening of an accident or from the mere fact that an injury occurred. *Green v. Castronova* , 9 Ohio App.2d 156, 223 N.E.2d 641( 7th Dist. 1966). *See, also*, *J.C. Penny Co. v. Robison* , 128 Ohio St. 626, 193 N.E. 401 (1934), paragraph four of the syllabus (concluding the fact that a customer slipped and fell on a floor does not, standing alone, create an inference that the floor was unsafe; there must be testimony tending to show that some negligent act or omission of the business owner caused the customer to slip and fall).

**{¶15}** For a business invitee to recover in a "slip-and-fall" negligence action against the owner of the premises, the plaintiff must show:

**{¶16}** 1. That the defendant through its officers or employees was responsible for the hazard complained of; or

**{¶17}** 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

**{¶18}** 3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

**{¶19}** *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589, 49 N.E.2d 925 (1943).

**{¶20}** When negligence is based upon the presence of a foreign substance on the floor, the business invitee must establish the following: (1) that the owner or occupier, or its employee, put the substance on the floor; (2) that the owner or occupier had actual knowledge of the presence of the substance on the floor, but failed to remove it or to warn the invitee, or (3) that the substance was on the floor long enough for the owner or occupier to have constructive notice of its presence and thus have a duty to warn about or to remove it. *Anaple v. Standard Oil Co.*, 162 Ohio St. 537, 124 N.E.2d 128 (1955). Absent actual notice or a condition created by the store or its employees, constructive notice requires proof by direct or circumstantial evidence that the store in the exercise of ordinary care had or should have had notice of the condition or foreign substance because of the length of time of its presence on the floor. *Presley v. Norwood,* 36 Ohio St.2d 29, 31, 303 N.E.2d 81, 83 (1973).

{¶21} In the case sub judice, the trial court found, and we agree, that appellant produced no evidence that the alleged greasy substance on the floor was caused by appellees or appellees' employees, or that appellees knew about the greasy substance on the floor. Appellant, during his deposition, testified that he did not observe anything about the floor before he entered and that he looked at the floor before he entered. He testified that he did not observe any foreign substance on the floor. The following is an excerpt from appellant's deposition testimony:

{¶22} Q. Did the floor appear to be wet?

{¶23} A. It was greasy.

{¶24} Q. So the floor appeared to be greasy to you?

{¶25} A. Yes.

{¶26} Q. And you observed that the floor appeared to be greasy before you entered the building, correct?

{¶27} A. No. After I went in and pushed up the ramp, then it was greasy.

{¶28} Q. Okay. And you saw - -

{¶29} A. I looked dry to me when I was there, but it was just extremely greasy there.

{¶30} Q. I'm asking you whether the floor appeared to be greasy. You said - -

{¶31} A. No. When I come in, no, it wasn't greasy. But I slipped on it, so it was greasy.

{¶32} Q. Do you know what caused you to slip?

{¶33} A. Yeah.

{¶34} Q. What?

**{¶35}** A.  The grease on the floor.

**{¶36}** Q.  How do you know - -

**{¶37}** A.  Some substance was on the floor that I don't know what it was - -

**{¶38}** Q.  That's what I'm asking.

**{¶39}** A.  - - that made me fall….

**{¶40}** Q.  Let me ask you again, sir.  Can you state under oath what substance caused you to clip on the floor?

**{¶41}** A.  No.

**{¶42}** Appellant's deposition at 51-52.

**{¶43}** Because appellant admitted that he did not know what the substance was or how it got there, he cannot prove that appellees were responsible for the substance being there. Because the area was a delivery area, individuals other than appellees' employees would have had access to such area between 7:00 a.m. and 10:00 a.m.  As noted by the trial court, "so the potential sources of any foreign slippery substance could be numerous. Based on the evidence…, it would be pure speculation to suggest where this substance might have come from."

**{¶44}** Appellant also produced no evidence as to how long the alleged greasy substance was on the floor. Freddie Edwards testified that he would have inspected and mopped the area, if necessary by 7:00 a.m. He testified that he has to have the floor dry by 7:00 a.m. because Dawn Herchenroeder, the prep cook, arrives then and delivery drivers start arriving. The following is an excerpt from his deposition testimony:

**{¶45}** Q.  Okay.  But the last area you clean is the delivery area?

**{¶46}** A.  Yea, we'll sweep it out.  If it ain't clean, I'll take that mop - - the same degreaser mop, dry off real good, mop whatever and make sure it good. Then I take my rinse water and do the same thing, go back over and dry it off agin.

**{¶47}** Q.  Which area are we talking about?

**{¶48}** A.  The delivery area.

**{¶49}** Q.  Delivery area.  Okay.  So it sounds to me like you may not necessary use your brush?

**{¶50}** A.  In the back of the house?

**{¶51}** Q.  Yes.

**{¶52}** A.  It don't really be that dirty back there.  So that - -  there be really no grease, nothing on the floor back there.

**{¶53}** Q.  Okay.

**{¶54}** A.  So the most of what you see there, you'll see from that black - - you notice we got - - our street is black.  And with them [the delivery drivers] coming in - - you see this right here?  When they coming in - - you all you can see is wheel marks from the black tires.  They constantly coming in with the wheelbarrow with the black tires, so that's what you see there.

**{¶55}** Deposition of Freddie Edwards at 40-41. It is undisputed that the area in question would have been cleaned and inspected at approximately 7:00 a.m. by Edwards. As is stated  above, Edwards testified that the area really did not get that dirty and was not known for accumulating grease.

**{¶56}** There is no evidence that anyone complained of the condition of the floor prior to appellant's fall. Appellant, during his deposition, testified that he was unaware of

anyone complaining of the condition of the floor prior to his fall. He further testified that, regardless of what caused him to slip and fall, he had no personal knowledge of how long any substance had been there or what caused the floor to be in that condition on that morning. Appellant testified that the area looked dry before he fell.

**{¶57}** Appellant testified that he had never slipped on the ceramic tile floor inside the rear delivery entrance at the restaurant prior to the date of the incident and that the floor had not been slippery prior to such date.

**{¶58}** Dawn Herchenroeder, the prep cook, testified during her deposition that her routine when she arrives at 7:00 a.m. is to go downstairs and get the checkbook and that she unlocks the door for the rear delivery entrance. She testified that she has never slipped on the rear entrance floor and did not do so that morning. She, therefore, would have traversed the area at issue without incident.

**{¶59}** Appellant maintains that appellees or their employees created the hazard by piling up large amounts of trash and dragging such trash on the floor, causing it to leak or otherwise spill. Edwards testified that all trash from the previous night as supposed to have been removed prior to his arrival in the morning. There was no testimony or other evidence that a bag or box was leaking. Appellant testified that he did not have to move anything to get into the building. We find that appellant's theory that leaking trash caused his fall is speculation and not supported by the evidence. There also is no evidence that any of appellees' employees were responsible for the greasy substance to be there or knew of its existence.

**{¶60}** We find that, construing the evidence in appellant's favor, reasonable minds could only conclude that appellees were not negligent. Appellant has not shown what the

substance was that he slipped on, that appellees caused the substance to be there, or that appellees had adequate time to clean up the same.

**{¶61}** Appellant's sole assignment of error is, therefore, overruled.

**{¶62}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, P.J.

Wise, John, J. and

Wise, Earle, J. concur.